**Robert Lee GRAY, the natural father of David Allen Gray, aka John Gray, Deceased, Plaintiff and Appellant,**

v.

**Galveston Sonny SCOTT and Beehive Lodge of Elks # 407, I. B. P. O. E. W., Defendants and Respondent.**

No. 14355.

Supreme Court of Utah.

June 1, 1977.

James A. McIntosh, of McIntosh & Robertson, Salt Lake City, for plaintiff and appellant.

Ron W. Eubanks, Leonard H. Russon, Salt Lake City, for defendants and respondent.

MAUGHAN, Justice:

On appeal is a verdict, and certain rulings of the trial court, in favor of defendants. We affirm no costs awarded.

Plaintiff brought this action to recover for the wrongful death of his twenty-year-old son, David Allen Gray. Gray died from a gunshot wound inflicted by Galveston Sonny Scott. The action is grounded on the alleged negligence of defendants in failing to provide adequate security to protect Gray against the harm which killed him, during a New Year's Eve party, at defendant's lodge. The claim is made it was reasonable the harm should have been anticipated.

The shooting was the culmination of a feud between Gray and Scott, which had existed for several days. The dispute involved some jewelry, which Gray claimed had been stolen from him by a Miss Williams. She had given the jewelry to Scott, who had sold it. The parties were unable to resolve the problem upon confrontation. Later, on December 29, Miss Williams and Scott attended a dance at defendant's lodge. Gray arrived at the premises and engaged in an argument with Miss Williams, during which time he struck her. Scott intervened and a brief scuffle ensued. The lodge manager immediately intervened, and Gray departed. The manager did not know the parties and did not attempt to ascertain their names.

After Gray's departure, Scott's sister informed him Gray had gone to procure a gun. Scott sent a friend to provide himself with a weapon. Upon receipt of the gun, Scott departed by means of the back door.

6. *Cox v. Cox,* Utah, 532 P.2d 994 (1975).

Scott observed Gray at the front door of the lodge, which was locked as the dance had terminated and the lodge had closed. The parties later exchanged shots on the street, and in an alley near the lodge. The manager of the lodge and the band leader, who was yet on the premises, did not hear the gunfire.

After the parties had departed, the manager was informed there had been shooting in the alley. The manager did not investigate the incident or attempt to ascertain the identity of the parties. This asserted dereliction is the basis of the claim of plaintiff that defendants knew or should have known of the danger posed by Scott to Gray; and should have taken measures to provide security to protect Gray while he was present on defendant's premises at the later date.

Defendants had planned a New Year's Eve party. It included dancing and a post midnight breakfast, for members of the lodge, who had made reservations. The admission fee was five dollars.

Gray entered defendant's premises shortly after midnight. After his death, a membership card was found on his body. The police could not locate the card for the trial; so the identification on the card is unknown. Gray was not included on the membership rolls of the lodge.

At approximately 1:50 a. m. Scott entered the premises, brushed past the man stationed at a desk located by the door. There is a dispute in the testimony as to whether Gray had a weapon, and who fired first. Although no weapon was found on decedent, there was testimony that a friend of Gray's had removed it. After Gray was shot, Scott retreated and departed. The entire occurrence was of a momentary nature.

Defendants presented evidence indicating none of its officers or members had any knowledge of the shooting incidents involving Gray and Scott. The party had started at 10 o'clock, and the evening had been peaceful. The shooting occurred as the party was ending. The lodge had never experienced any serious trouble, such as, a shooting or knifing at one of the lodge's formal events. Although there had been an occasional dispute on the club premises, the leader of the lodge characterized them as family arguments, which the membership quickly resolved.

There had been one incident six months previously in the game room in the basement of the lodge. One card player shot another in the leg; both had been permanently banned from the lodge.

The average age of the membership was 54.6 years, the activities of the lodge centered around charitable and social functions. The officers did not feel security was a problem; and, therefore, they did not employ armed, uniformed security guards to police their social functions. The Antler Guard, a ceremonial office, had the official responsibility to maintain order at official functions, but this group was not considered as a security unit. They had no formal training and were not equipped with any defensive weapons.

On appeal, plaintiff contends the court committed prejudicial error by giving Instruction No. 36, which assertedly had the effect of directing a verdict in favor of defendants. The challenged instruction provided:

> You are instructed that a private lodge or association, as well as its officers, has no duty to anyone to anticipate that a crime will be committed by another person, and to act upon that belief.

Plaintiff contends the court should have instructed the jury, as requested by plaintiff, as follows: That defendants had the duty to anticipate danger which is reasonably foreseeable and to take all precautions for the protection of their guests, which reasonable prudence and ordinary care would suggest. Also defendants had a duty to take affirmative action to maintain order, when harm to patrons is reasonably foreseeable, and certainly whenever the circumstances are such as to indicate the danger of harm to patrons should have been anticipated by one reasonably alert.

Plaintiff contends there were sufficient facts in the record to submit to the jury the issue of whether defendants had violated their duty to anticipate that another fight or shooting would be committed on the premises. With this contention we cannot agree.

The Restatement, Torts, Second, Sec. 344, provides:

A possessor of land who holds it open to the public for entry for business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment f., thereunder provides:

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford reasonable protection.

Contrary to plaintiff's contention, the particular facts of the matter under review do not require submission of the foregoing duty to the jury.

Restatement, Torts, Second, Sec. 328 B, provides:

In an action for negligence the court determines

(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably find the existence or nonexistence of such facts;

(b) whether such facts give rise to any legal duty on the part of the defendant;

Comment e., thereunder states:

It is the further function of the court to determine whether, upon facts in evidence which the jury may reasonably find to be true, the law imposes upon the defendant any legal duty to act or to refrain from acting for the protection of the plaintiff. This decision is always for the court. Thus it is no part of the province of a jury to determine what duty a possessor of land owes to an undiscovered trespasser. [See Sec. 333.] Where the existence of the duty will depend upon the existence or nonexistence of a fact as to which the jury may reasonably come to either one of two conclusions—as for example, whether the trespasser was in fact discovered—then it becomes the duty of the court to instruct the jury as to defendant's duty, or absence of duty, if either conclusion as to such fact is drawn.

Under plaintiff's theory the manager of the lodge should have investigated the report that there had been a shooting in the alley and determined that the participants were the ones engaged in a minor scuffle previously in the club. Then the club should have taken precautionary steps to guard against the potential hazard posed by these belligerents.

The trial court properly ruled these tenuous facts to be insufficient to submit to the jury the question; whether it was reasonable or not for defendants to anticipate a shooting, at the lodge's New Year's Eve celebration. Under the particular facts in evidence, it was not error to instruct that defendants had no duty to anticipate the commission of the subject crime.

The duty of a possessor of premises, under similar circumstances, is set forth in *Rosensteil v. Lisdas.*[1] There the court stated:

> Even if a restaurant owner has the duty under some circumstances to employ personnel who are capable of keeping order and thus protect his patrons from injury from the foreseeable conduct of his patrons, he is not required to employ such personnel for the contingency that outsiders will elect to use the restaurant rather than the street as their battleground. . . .
>
> . . . the fact that previous disturbances had occurred in the restaurant would not impose upon defendants the duty to prepare against disturbances which originated in conflict elsewhere and which result in harm to defendant's patrons simply because the victim without any warning to defendants chose to use defendant's restaurant as a place of refuge.

Resolution of the central question against plaintiff renders it unnecessary to reach the other assignments of error.

ELLETT, C. J., and GEORGE E. BALLIF, District Judge, concur.

CROCKETT, J., concurs in result.

WILKINS and HALL, JJ., do not participate herein.

---

1.  253 Or. 625, 456 P.2d 61, 63 (1969).